**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| **RONALD KEITH BOATRIGHT,** § | |
| **TDCJ No. 02371136,** § | |
| § | |
| Petitioner, § | |
| § | |
| V. § | **A-23-CV-1091-RP** |
| § | |
| **BOBBY LUMPKIN, Director,** § | |
| **Texas Department of Criminal Justice,** § | |
| **Correctional Institutions Division,** § | |
| § | |
| Respondent. § | |

## ORDER

Before the Court are Ronald Keith Boatright's ("Petitioner") pro se Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 1) and Respondent Bobby Lumpkin's Answer (ECF No. 16). Petitioner has also filed a motion to appoint counsel. (ECF No. 14.) Having reviewed the record and pleadings submitted by both parties, the Court concludes most of Petitioner's claims are procedurally defaulted from federal habeas review and denies Petitioner's remaining claims under the standards prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See* 28 U.S.C. § 2254(d). Petitioner's pending motion for the appointment of counsel is also denied.

### I. Background

In April 2019, Petitioner was charged by indictment with murder. (ECF No. 18-22 at 1.) On October 28, 2021, a jury convicted Petitioner of murder and sentenced him to forty-five years imprisonment. *State v. Boatright*, No. 16789 (21st Dist. Ct., Bastrop Cnty., Tex. Oct. 28, 2021). (ECF No. 18-22 at 2-4.) The following is a summary of the factual allegations against Petitioner:

The jury heard evidence that on February 13, 2019, Boatright shot and killed his 21-year-old stepson, Toby Darst, at their home in Cedar Creek. Nancy McAdams, who is Boatright's wife and Darst's mother, witnessed the shooting and testified at trial. McAdams testified that Boatright was drunk that day and had been "antagonizing" Darst by "cutting off" the internet while Darst was trying to play video games in his bedroom. McAdams, sensing the "tension" between the two men, told Boatright to "go wait in the truck" and told Darst that she and Boatright were leaving. At that point, Darst "lost it" and "got very upset," yelling at his mother, "There is no way you're leaving with him. He's going to kill you." Darst also yelled, "I'm not ever going to hide again. I'm not a coward. Nobody is going to hurt my mom."

As Darst continued to yell, McAdams saw Boatright inside the house with a gun, pointing it at her. McAdams next saw Darst holding a gun, and Darst's gun "went off":

> And I was like—I was looking at a gun pointing at me, my son saw it, and that—he pulled his, but the gun went off and it was like—it was way too high and way to the left. It—I mean, it wasn't—he didn't even get it pointed and it went off.

Boatright then shot Darst. McAdams described the sequence of events as follows:

> And so I was standing there and my son pulled a gun. He leaned forward and I saw his gun, and I thought no. And then [Darst] got it up, but not over, and it went off. The next fired shot was fired. At the time I did not know this, but it hit [Darst's] shoulder.... But [Darst] still didn't go down. I got in front and [Darst] was unarmed at this point, I was unarmed, and [Boatright] put a bullet in him.

On cross-examination, McAdams testified that there were four gunshots. According to McAdams, the first shot was from Darst's gun and the second, third, and fourth shots were from Boatright's gun. McAdams believed that the second shot hit Darst in the shoulder, causing him to drop his gun; the third shot missed Darst; and the fourth shot, which McAdams described as the "kill shot," hit Darst in the head.

At the time of his death, Darst had his cell phone on him, and the phone, which was discovered in Darst's pants pocket at the medical-examiner's office, audio-recorded the shooting. A copy of that recording was admitted into evidence and played for the jury. At the beginning of the recording, Darst could be heard yelling at McAdams and accusing Boatright of various bad acts, including being a "wife beater" and putting a gun to Darst's head, and McAdams could be heard yelling back at Darst and attempting to calm him down. Then, Darst could be heard shouting, "You got a fucking gun?" Immediately thereafter, four gunshots could be

heard in quick succession, followed by McAdams yelling at Boatright to get out of the house and then calling 911 to report that her son had been shot.

Deputy Nathan Neitsch of the Bastrop County Sheriff's Office was one of the first officers to arrive at the scene. When he arrived, another deputy was detaining Boatright outside. Deputy Neitsch went inside the residence and observed McAdams crying and Darst lying face down on the living-room floor, with a "pool of blood" beneath him. There was a firearm near McAdams's feet, a .45-caliber Springfield XDS, that was later determined to be the gun that Darst had fired during the incident. Neitsch also observed another firearm on the kitchen island counter, a .45-caliber SIG Sauer 1911, that was later determined to be the gun that Boatright had used to shoot Darst.

When EMS arrived at the scene, Darst was pronounced dead. An autopsy determined that Darst had two gunshot wounds, one to his right shoulder and one at the top of his nose. According to the autopsy report, the gunshots caused Darst's death, with the gunshot to the shoulder contributing to Darst's blood loss and the gunshot to the head delivering the fatal blow. Toxicology testing performed during the autopsy revealed that Darst had methamphetamine, amphetamine, and alcohol in his system at the time of his death, and his blood-alcohol level was .08 percent.

Following the shooting, Boatright and McAdams were interviewed by Officer Mark Garcia of the Bastrop County Sheriff's Office. Boatright told Garcia that Darst had been using drugs that day and was acting in a "threatening" manner. He admitted shooting Darst but claimed that he did so only after Darst had pointed his gun at him. McAdams told Garcia that Boatright had been waiting outside in the truck and came back inside the house when he heard McAdams and Darst arguing. McAdams denied that Boatright had pointed a gun at her. McAdams made another statement to police that when Boatright came through the door, he had his gun pointed at Darst.

Investigator Robert Carvin of the Bastrop County Sheriff's Office investigated the shooting. Carvin provided extensive testimony regarding the physical evidence in the case, including the location of the firearms, bullets, shell casings, and other evidence that was collected from the house. Carvin testified that Boatright's claim that he shot Darst in self-defense was "not consistent with what we found at the scene." Specifically, "the way the rounds were fired there," "the direction, the positioning of Nancy and Toby" in the house, and the locations where officers had found the bullets and bullet holes "didn't line up with" Boatright's account of the incident, while McAdams's account was "more in line with" the physical evidence obtained during the investigation.

The jury found Boatright guilty of murder. This appeal followed.

3

*Boatright v. State*, No. 03-21-00591-CR, 2022 WL 3722385 at *1-2 (Tex. App.--Austin, Aug. 30, 2022, no pet.). On August 30, 2022, Petitioner's conviction was affirmed on direct appeal. *Id.* On February 7, 2023, Petitioner filed a motion for an extension of time to file a petition for discretionary review. On February 14, 2023, the Texas Court of Criminal Appeals (TCCA) denied the motion. *Boatright v. State*, No. PD-0094-23 (Tex. Crim. App. Feb. 14, 2023).

On March 25, 2023, Petitioner filed a state habeas corpus application, listing the following four grounds of relief:

1. There was insufficient evidence to support his conviction for murder because he acted in self-defense.

2. The prosecutor should have listed the lesser-included offense of voluntary manslaughter in the jury charge.

3. His trial counsel provided ineffective assistance of counsel when counsel failed to discuss a plea bargain with Petitioner during his pre-trial confinement in jail.

4. His appellate counsel provided ineffective assistance when counsel failed to file a petition for discretionary review on Petitioner's behalf.

(ECF Nos. 18-20 at 5 to 18-21 at 6.) On June 28, 2023, the TCCA denied Petitioner's state habeas application without written order. *Ex parte Boatright*, No. WR-94,793-01 (Tex. Crim. App. June 28, 2023). (ECF No. 18-24.)

On August 25, 2023, Petitioner executed his federal habeas petition, listing the following four grounds of relief:

1. There was insufficient evidence to support the jury's rejection of Petitioner's claim of self-defense.

2. The prosecutor erred by failing to present the lesser-included charge of voluntary manslaughter to the jury.

3. Petitioner received ineffective assistance of counsel when his appellate counsel failed to file a petition for discretionary review.

4. Petitioner received ineffective assistance of counsel when his trial counsel failed to:

4

      a. discuss a plea offer with Petitioner;
      b. call Michael McLynn as a witness;
      c. subpoena Nancy McAdams's phone record;
      d. have a recording played at trial that showed McAdams manipulated evidence at the crime scene;
      e. call perjury on Nancy McAdams;
      f. call perjury on Investigator Carvin;
      g. provide all the facts to Petitioner;
      h. show that Mr. Darst was the aggressor;
      i. ensure the Clerk's Record was complete; and
      j. show Mr. Darst's shoulder wound was not from Petitioner's first shot.

(ECF No. 1.) Respondent Lumpkin answered the petition, arguing claims 1 and 4(b)-(j) are procedurally defaulted from federal habeas review, while claims 2, 3, and 4(a) are meritless. (ECF No. 16.) Petitioner has not replied.

## II. Standard of Review

Petitioner's federal habeas petition is governed by the heightened standard of review provided by AEDPA. *See* 28 U.S.C. § 2254. Under § 2254(d), a petitioner may not obtain federal habeas corpus relief on any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Brown v. Payton*, 544 U.S. 133, 141 (2005). This demanding standard stops just short of imposing a complete bar on federal court re-litigation of claims already rejected in state proceedings. *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996)).

A federal habeas court's inquiry into unreasonableness should always be objective rather than subjective, with a focus on whether the state court's application of clearly established federal law was "objectively unreasonable" and not whether it was incorrect or erroneous. *McDaniel v.*

*Brown*, 558 U.S. 120 (2010); *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003). Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. *Richter*, 562 U.S. at 102. A petitioner must show that the state court's decision was objectively unreasonable, not just incorrect, which is a "substantially higher threshold." *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007); *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). As a result, to obtain federal habeas relief on a claim previously adjudicated on the merits in state court, Petitioner must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103. "'If this standard is difficult to meet—and it is—that is because it was meant to be.'" *Mejia v. Davis*, 906 F.3d 307, 314 (5th Cir. 2018) (quoting *Burt v. Titlow*, 571 U.S. 12, 20 (2013)).

### III. Analysis

1. Procedural Default (claims 1, 4(b)-(j))

In claims 1 and 4(b)-(j) of Petitioner's federal habeas petition, he argues the jury's rejection of his claim of self-defense is not supported by the evidence, and that his trial counsel provided ineffective assistance when he failed to call Michael McLynn as a witness; subpoena Nancy McAdams's phone record; have a recording played at trial that showed McAdams manipulated evidence at the crime scene; call perjury on Nancy McAdams; call perjury on Investigator Carvin; proved all the facts to Petitioner; show that Mr. Darst was the aggressor; ensure the Clerk's Record was complete; and show Mr. Darst's shoulder wound was not from Petitioner's first shot. In response, Respondent argues these claims were not fairly presented to the state habeas court before

6

Petitioner raised them in his federal habeas petition and are therefore unexhausted and procedurally defaulted from federal habeas review. Petitioner has not replied to these arguments.

Before seeking review in federal court, a habeas petitioner must first present his claims in state court and exhaust all available state court remedies through a proper adjudication on the merits. *See* 28 U.S.C. § 2254(b)(1)(A) (federal habeas relief may not be granted unless it appears petitioner exhausted remedies available in the state courts). The exhaustion requirement is satisfied if the substance of the federal habeas claim was presented to the highest state court in a procedurally proper manner. *Baldwin v. Reese*, 541 U.S. 27, 29-32 (2004); *Moore v. Cain*, 298 F.3d 361, 364 (5th Cir. 2002). In Texas, this exhaustion requirement is satisfied if the substance of the claim was presented to the TCCA in a procedurally proper manner either through a petition for discretionary review (PDR) or through a state application for writ of habeas corpus. *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998).

If a petitioner "fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,'" then a petitioner's claim is procedurally defaulted from federal habeas review. *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997) (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)). The only way for a petitioner to overcome a procedural default is if he can show cause for the default and resulting prejudice, or if he demonstrates that the federal court's failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750-51 (1991); *Busby v. Dretke*, 359 F.3d 708, 718 (5th Cir. 2004).

Petitioner failed to exhaust his ineffective-assistance claims 4(b)-(j) when he did not list them in his state habeas application. Should this Court now require Petitioner to return to state court to satisfy the exhaustion requirement, the TCCA would find the claims procedurally barred under the abuse of the writ doctrine found in Article 11.07 § 4 of the Texas Code of Criminal Procedure. Because the TCCA would likely bar another habeas corpus application by Petitioner, this claim is procedurally defaulted from federal review. S*ee, e.g., Bagwell v. Dretke*, 372 F.3d 748, 755-56 (5th Cir. 2004) (holding a petitioner procedurally defaulted a claim by failing to "fairly present" it to the state courts in his state habeas corpus application); *Smith v. Cockrell*, 311 F.3d 661, 684 (5th Cir. 2002) (holding unexhausted claims were procedurally barred).

Petitioner can only overcome this procedural default by showing cause for the default with resulting prejudice, or by demonstrating that this Court's failure to consider the claim will result in a fundamental miscarriage of justice. However, because Petitioner has not replied to Respondent's answer, he fails to make either showing. As a result, the Court finds claims 4(b)-(j) to be unexhausted and therefore procedurally defaulted from federal habeas review.

Regarding Petitioner's claim that there was insufficient evidence supporting the jury's rejection of his self-defense argument, unlike claims 4(b)-(j), this claim was presented in Petitioner's state habeas application and subsequently denied by the TCCA. However, a petitioner's state habeas claim is also subject to procedural default if "a state court clearly and expressly bases its dismissal of a prisoner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal." *Nobles*, 127 F.3d at 420. Texas courts have consistently held that claims of sufficiency of the evidence must be raised on direct appeal and are not cognizable in post-conviction writs of habeas corpus. *See Ex parte McLain*, 869 S.W.2d 349, 350 (Tex. Crim. App. 1994) (holding evidentiary sufficiency claims are

8

not cognizable in post-conviction collateral attacks); *West v. Johnson*, 92 F.3d 1385, 1389 n.18 (5th Cir. 1996) (recognizing this legal principle under Texas law). As such, the TCCA has held that, "where an applicant challenges the sufficiency of the evidence on an application for a writ of habeas corpus, and we subsequently dispose of the application by entering a denial without written order, the applicant's sufficiency claim was denied because the claim is not cognizable." *Ex parte Grigsby*, 137 S.W.3d 673, 674 (Tex. Crim. App. 2004).

Petitioner raised his sufficiency claim on direct appeal but did not file a PDR. As a result, this claim was not properly presented to the TCCA through a PDR and therefore was not exhausted through that method. While Petitioner again raised the sufficiency claim in his state habeas corpus application, the TCCA denied it without written order.

*Ex parte Grigsby* is clear: by denying Petitioner's sufficiency-of-the-evidence claim without written order, the TCCA determined the claim was non-cognizable in Petitioner's state habeas application. The TCCA's disposition of Petitioner's claim thereby constitutes an independent and adequate ground for dismissal based on a state procedural rule. *See Register v. Thaler*, 681 F.3d 623, 628 (5th Cir. 2012) (Petitioner's sufficiency of the evidence claim was denied on independent and adequate state ground when it was not raised on direct appeal and was not cognizable on state habeas review). Because Petitioner did not reply to Respondent's answer, he provides no argument that would overcome this procedural default. Accordingly, this claim is dismissed as procedurally defaulted from federal habeas review.

2. Prosecutorial Error (claim 2)

In his second claim for habeas relief, Petitioner argues the prosecutor erred by failing to include the lesser-included offense of voluntary manslaughter in the jury charge.

Claims of improper jury instruction or rejection of a requested jury instruction in state criminal trials do not generally form the basis for federal habeas relief. *Galvan v. Cockrell*, 293 F.3d 760, 764 (5th Cir. 2002) (citing *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991) (federal habeas courts do not grant relief solely on the basis of an improper jury charge)). The relevant inquiry is whether the failure to give an instruction "by itself so infected the entire trial that the resulting conviction violates due process." *Id*. 764-65 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). However, for non-capital murder cases, the Fifth Circuit has already determined that "the failure to give an instruction on a lesser included offense does not raise a federal constitutional issue." *Valles v. Lynaugh*, 835 F.2d 126, 127 (5th Cir. 1988); *see also Alexander v. McCotter*, 775 F.2d 595, 601 (5th Cir. 1985) (holding lesser included offense instruction is not a federal constitutional matter in non-capital cases).

In Petitioner's direct appeal, the court of appeals held there was sufficient evidence to support the jury's implicit rejection of his self-defense theory, and that "viewing the evidence … in the light most favorable to the verdict, we conclude that a rational jury could have found beyond a reasonable doubt that Boatright murdered Darst and that he did not act in self-defense." *Boatright*, 2022 WL 3722385 at *4. The TCCA rejected this claim in Petitioner's state habeas application, and Petitioner has failed to provide any evidence suggesting the failure of the State to include a voluntary manslaughter jury instruction "so infected the entire trial that the resulting conviction violates due process." *Galvan*, 293 F.3d at 764-65. This claim is denied.

3. Ineffective Assistance of Trial Counsel (claim 4(a))

In claim 4(a) Petitioner argues he received ineffective assistance of counsel when his trial counsel failed to explain a plea deal for the entire 2.5 years Petitioner was in county jail awaiting trial, which prejudiced Petitioner's ability to make an informed choice. (ECF No. 1 at 37.)

10

The Sixth Amendment to the United States Constitution guarantees citizens the assistance of counsel in defending against criminal prosecutions. U.S. CONST. amend VI. Sixth Amendment claims based on ineffective assistance of counsel are reviewed under the familiar two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner cannot establish a violation of his Sixth Amendment right to counsel unless he demonstrates (1) counsel's performance was deficient and (2) this deficiency prejudiced the petitioner's defense. *Id.* at 687-88, 690. The Supreme Court has emphasized that "[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

When determining whether counsel performed deficiently, courts "must be highly deferential" to counsel's conduct and a petitioner must show that counsel's performance fell beyond the bounds of prevailing objective professional standards. *Strickland,* 466 U.S. at 687-89. Counsel is "'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Burt*, 571 U.S. at 22 (quoting *Strickland*, 466 U.S. at 690). To demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Under this prong, the "likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112 (citing *Strickland*, 466 U.S. at 693). A habeas petitioner has the burden of proving both prongs of the *Strickland* test. *Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

Ineffective assistance of counsel claims are considered mixed questions of law and fact and are analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010). When the state court has adjudicated the claims on the merits, a federal court must review a petitioner's claims under the "doubly

11

deferential" standards of both *Strickland* and Section 2254(d). *See Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (citing *Cullen*, 563 U.S. at 190). In such cases, the "pivotal question" is not "whether defense counsel's performance fell below *Strickland*'s standard," but whether "the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S at 101.

In *Missouri v. Frye*, 566 U.S. 134, 138-45 (2012), the Supreme Court held that the Sixth Amendment right to effective assistance of counsel extends to the negotiation and consideration of plea offers. The Court held that, "as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Id*. at 145. Accordingly, when such an offer is not communicated to the defendant, defense counsel "[does] not render the effective assistance the Constitution requires." *Id*.

In raising this claim in his state habeas application, Petitioner stated he "did not want to speak about a plea deal because it is apparent he is not guilty of murder. The trial counsel still should [have at] least try. After being found guilty [Petitioner] would of at least had a chance to consider it. [There is] a reasonable probability the judge would of offer less than 45 years." (ECF No. 18-20 at 12.) Petitioner restates these allegations in his federal petition.

In denying this claim, the TCCA must have concluded either there was not a favorable plea offer, or there was a favorable plea offer that Petitioner rejected. Petitioner's own statements support the first option. Petitioner seems to be arguing he should have been able to accept a plea deal after he was found guilty by the jury. However, there is nothing in the record to suggest the State made a favorable plea offer to Petitioner and therefore Petitioner has failed to show his trial counsel failed to present him with a favorable plea deal. *United States v. Demik*, 489 F.3d 644, 646 (5th Cir. 2007) ("conclusory allegations are insufficient to raise cognizable claims of ineffective assistance of counsel") (quoting *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000)).

Accordingly, the state habeas court's application of *Strickland* to this claim was not unreasonable, and it is denied.

4. Ineffective Assistance of Appellate Counsel (claim 3)

Petitioner's final claim is that he received ineffective assistance of counsel when his appellate counsel failed to file a PDR on Petitioner's behalf.

A criminal defendant is constitutionally entitled to effective assistance of appellate counsel when he has a right to appeal under state law. *Evitts v. Lucey*, 469 U.S. 387, 397 (1985); *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000). The *Strickland* standard for proving ineffective assistance of counsel applies equally to both trial and appellate attorneys. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Dorsey v. Stephens*, 720 F.3d 309, 319 (5th Cir. 2013). To obtain relief, Petitioner must demonstrate that (1) counsel's conduct was objectively unreasonable under then-current legal standards, and (2) there is a reasonable probability that, but for counsel's deficient performance, the outcome of Petitioner's appeal would have been different. *See Smith*, 528 U.S. at 285; *Higgins v. Cain*, 720 F.3d 255, 260-61 (5th Cir. 2013). To demonstrate deficiency, Petitioner must show that "counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them." *Smith*, 528 U.S. at 285. Counsel is not, however, required to "raise every nonfrivolous claim, but rather may select among them in order to maximize the likelihood of success on appeal." *Id.* at 288 (citing *Jones v. Barnes*, 463 U.S. 745 (1983)).

The record shows that, on August 30, 2022, Petitioner's appellate counsel filed a letter with the state court of appeals stating he had sent Petitioner a copy of the appellate opinion and had informed Petitioner of his right to file a pro se PDR. Appellate counsel attached a copy of the certified mail receipt showing he mailed the document to Petitioner. (ECF No. 16-1.)

Petitioner has no constitutional right to the assistance counsel in filing a PDR. *See Ross v. Moffitt*, 417 U.S. 600, 610 (1974) (Constitution does not guarantee right to counsel over discretionary appeals, as opposed to direct appeals). Under Texas state law, counsel is required to inform defendants of their rights to file a pro se petition for discretionary review. *Ex parte Wilson*, 956 S.W.2d 25, 26-27 (Tex. Crim. App. 1997). However, "'[Federal courts] do not sit as a "super" state supreme court' in such a proceeding to review errors under state law." *Dickerson v. Guste*, 932 F.2d 1142, 1145 (5th Cir. 1991) (quoting *Martin v. Wainwright*, 428 F.2d 356, 357 (5th Cir. 1970)). In any event, it appears Petitioner's appellate counsel complied with state law. Accordingly, because there is no constitutional right to counsel for discretionary appeals, this claim is denied.

5. Motion to Appoint Counsel

Finally, Petitioner moves for appointment of counsel, arguing he is unable to obtain certain documents from the trial court. (ECF No. 14.) There is no constitutional right to have an attorney appointed when a prisoner collaterally attacks his conviction. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *McFarland v. Collins*, 7 F.3d 47, 49 (5th Cir. 1993). Nonetheless, this Court is permitted to appoint counsel to a § 2254 petitioner where "the interests of justice so require and such person is financially unable to obtain representation." 18 U.S.C. § 3006A(b). Additionally, an indigent prisoner is entitled to appointed counsel in § 2254 cases if the court determines an evidentiary hearing is required. Rule 8(c), Rules Governing Section 2254 Proceedings. An evidentiary hearing is not required and Petitioner's claims are either barred from federal habeas review or meritless. As a result, Petitioner's motion for the appointment of counsel is denied.

## **IV. Certificate of Appealability**

A petitioner may not appeal a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the district court must issue or deny a certificate of appealability (COA) when it enters a final order adverse to the applicant. *See Miller-El v. Cockrell,* 537 U.S. 322, 335-36 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). In cases where a district court rejects a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a district court rejects a habeas petition on procedural grounds without reaching the constitutional claims, "a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the dismissal or denial of Petitioner's § 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El*, 537 U.S. at 327 (citing *Slack*, 529 U.S. at 484). Accordingly, the Court will not issue a certificate of appealability.

It is therefore **ORDERED** that Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1) is **DENIED**;

It is further **ORDERED** that Petitioner's Motion for Appointment of Counsel (ECF No. 14) is **DENIED**; and

It is finally **ORDERED** that a certificate of appealability shall not issue in this case.

SIGNED this 11th day of June, 2024.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE